UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ARIEL QUIROS,

    Plaintiff,

v.

IRONSHORE INDEMNITY, INC.,

    Defendants.

_____/

## COMPLAINT

Plaintiff Ariel Quiros sues Defendant Ironshore Indemnity, Inc. ("Ironshore") for declaratory judgment, breach of contract, and injunctive relief as follows:

### NATURE OF ACTION

1. This is an action seeking a declaration that Ironshore is contractually required to advance the costs of defending multiple actions filed against Quiros, damages for Ironshore's breach of an insurance contract by refusing to advance such defense costs, and injunctive relief requiring Ironshore to advance such defense costs.

2. Ironshore has claimed that it owes Quiros no duty to advance the costs of defending the actions against him. Quiros disagrees and asserts that under the directors and officers liability insurance policies issued by Ironshore, Ironshore has a duty to advance such defense costs.

### PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Quiros is a natural person and a citizen of the state of Florida.

4. Ironshore is a Minnesota corporation with its principal place of business in New York, New York.

5. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are diverse.

6. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper because Ironshore is deemed to "reside" in this district under 28 U.S.C. § 1391.

### FACTUAL BACKGROUND

### The D&O Policies

7. Ironshore issued Directors, Officers and Private Company Liability Insurance Policy No. 001100502 (the "2014 Policy") to Qdevelopment LLC d/b/a QResorts Inc. ("QResorts"), effective July 7, 2013 through July 7, 2014, with a $10 million limit of liability. A copy of the 2014 Policy is attached as Exhibit A.

8. Ironshore issued Directors, Officers and Private Company Liability Insurance Policy No. 001100504 (the "2016 Policy") to QResorts, effective August 7, 2015 through August 7, 2016, with a $10 million limit of liability. A copy of the 2016 Policy is attached as Exhibit B.

9. Aside from their effective dates, the 2014 Policy and the 2016 Policy (collectively, the "Policies") are identical.

10. The Policies are valid and enforceable contracts under Florida law, and were in full force and effect at all material times.

11. The Policies contain the following insuring clause:

> The **Insurer** shall pay on behalf of an **Insured Person** all **Loss** which the **Insured Person** shall be legally obligated to pay as a result of a **Claim** (including

an **Employment Practices Claim**) first made against the **Insured Person** during the Policy **Period** or the Discovery Period for a **Wrongful Act**, and reported to the **Insurer** pursuant to Section VII, except for any **Loss** which the **Company** actually pays as indemnification.

Policy § I.A.

12. As a director or officer of QResorts or one of its subsidiaries, Quiros is both an "**Insured Person**" and an "**Insured**" under the Policies.

13. The definition of the term "**Loss**" in the Policies includes "**Costs of Defense**." Policy, Endorsement No. 9.

14. The Policies define the term "**Costs of Defense**" as "reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim**." Policy § II.E.

15. The Policies define the term "**Claim**" to include "a civil, criminal, governmental, regulatory, administrative, or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading." Policy, Endorsement No. 9.

16. The Policies define the term "**Wrongful Act**" to include "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty . . . by any **Insured Person** in their capacity as such with the **Company**" and "any matter claimed against any **Insured Person** solely by reason of their capacity as such with the **Company**." Policy § II.Y(1) and (2).

17. The Policies define the term "**Company**" to include QResorts and any of its subsidiaries. Policy § II.C.

18. The Policies were issued for delivery and delivered to QResorts in Miami, Florida.

## The Actions Against Quiros

19. Quiros is currently a defendant in six pending actions. In general, each of these actions are based on allegations that Quiros, in his capacity as a director or officer of QResorts or its subsidiaries, misused and misappropriated millions of dollars in investor funds in connection with the EB-5 Immigration Investor Program.

20. On April 12, 2016, the United States Securities and Exchange Commission filed a civil enforcement action in the Southern District of Florida styled *S.E.C. v. Ariel Quiros et al.*¸ Case No. 1:16-cv-21301-DPG (the "SEC Action").  A copy of the operative complaint in the SEC Action is attached as Exhibit C.

21. In the SEC Action, the SEC alleges that Quiros, in his capacity as a director or officer of QResorts or its subsidiaries, perpetrated a "massive eight-year fraudulent scheme in which [he] systematically looted more than $50 million of the more than $350 million that has been raised from hundreds of foreign investors through the U.S.  Citizenship and Immigration Service's EB-5 Immigrant Investor Program."

22. In addition to injunctive and other non-monetary relief, the SEC seeks disgorgement, prejudgment interest, and civil money penalties. The SEC has claimed that, excluding prejudgment interest, Quiros's liability for a disgorgement award could be up to $350 million. Furthermore, the statutes under which the SEC seeks civil money penalties authorize penalties in the amount of $100,000 per violation of federal securities laws.

23. On April 14, 2016, the State of Vermont filed an enforcement action in Vermont Superior Court styled *State v. Quiros et al.*, Case No. 217-4-16Wncv (the "Vermont Action"). A copy of the operative complaint in the Vermont Action is attached as Exhibit D.

24. In the Vermont Action, the State of Vermont alleges numerous violations of the Vermont Uniform Securities Act and the Vermont Consumer Protection Act. The State of Vermont accuses Quiros of misusing more than $200 million in investor funds and misappropriating more than $50 million of such funds.

25. In addition to injunctive and other non-monetary relief, the State of Vermont seeks disgorgement, prejudgment interest, restitution to all allegedly defrauded investors, reimbursement for all costs for the prosecution and investigation of the Vermont Action, and civil money penalties in the amount of $10,000 per violation of the Vermont Consumer Protection Act and $15,000 per violation of the Vermont Uniform Securities Act.

26. On May 3, 2016, Plaintiffs Alexandre Daccache and eight other investors filed a civil lawsuit in the Southern District of Florida styled *Daccache et al. v. Raymond James & Associates, Inc. et al.*, Case No. 1:16-cv-21575-FAM (the "Daccache Action"). A copy of the operative complaint in the Daccache Action is attached as Exhibit E.

27. The Plaintiffs in the Dacacche Action assert causes of action against Quiros for aiding and abetting breach of fiduciary duty, conspiracy to commit breach of fiduciary duty, and Florida RICO violations.

28. The Daccache Action was originally one of four putative federal class action lawsuits filed against Quiros and other defendants. Plaintiffs in the other federal class actions voluntarily dismissed their cases and joined the Daccache Action. The result is a single consolidated putative class action.

29. In the Daccache Action, the nine named plaintiffs purport to bring the action on behalf of a proposed class of 836 investors who collectively invested more than $400 million. Plaintiffs in the Daccache Action seek compensatory damages, punitive damages, interest,

attorneys' fees, and costs. Furthermore, under the claim brought under the Florida RICO statute, Plaintiffs in the Daccache Action seek treble damages.

30. On May 20, 2016, Plaintiff Michael Goldberg, in his capacity as receiver for QResorts and its subsidiaries, filed a civil lawsuit in the Southern District of Florida styled *Michael Goldberg v. Raymond James Financial, Inc. et al.*, Case No. 1:16-cv-21831-JAL (the "Receiver Action"). A copy of the operative complaint in the Receiver Action is attached as Exhibit F.

31. The Receiver Action asserts claims against Quiros for aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, violation of the federal RICO statute, and conspiracy in violation of RICO. In addition to compensatory damages and interest, based on the RICO claims the Receiver also seeks treble damages and attorneys' fees.

32. On July 13, 2016, Plaintiff Caterina Gonzalez Calero and seven others filed suit against Quiros and others in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida in a case styled *Caterina Gonzalez Calero et al. v. Raymond James & Associates, Inc. et al.*, Case No. 2016-017840-CA-01 (the "Calero Action"). A copy of the operative complaint in the Calero Action is attached as Exhibit G.

33. The plaintiffs in the Calero Action allege multiple counts against Quiros including breach of fiduciary duty, conversion, civil theft, accounting, and civil conspiracy. Each of the eight plaintiffs seeks $550,000 in compensatory damages, as well as treble damages, attorneys' fees, and costs.

34. On November 7, 2016, Plaintiff Zheng Zhang and 30 other investors filed a civil lawsuit in the Southern District of Florida styled *Zheng Zhang et al. v. Raymond James &*

*Associates, Inc. et al.*, Case No. 1:16-cv-24655-KMW (the "Zhang Action"). A copy of the operative complaint in the Zhang Action is attached as Exhibit H.

35. Plaintiffs in the Zhang Action assert claims against Quiros for breach of fiduciary duty, fraud in the inducement, and conversion. The complaint in the Zhang Action alleges that each of the 31 plaintiffs suffered compensatory damages in the amount of $550,000. The plaintiffs also seek interest, costs, and punitive damages.

36. The SEC Action, the Vermont Action, the Daccache Action, the Goldberg Action, the Calero Action, and the Zhang Action (collectively, the "Actions") are all "**Claims**" under the Policies.

37. The Actions all allege "**Wrongful Acts**" by Quiros in his capacity as a director or officer of QResorts or its subsidiaries.

38. Collectively, when taking into account disgorgement, compensatory damages, interest, attorneys' fees, costs, punitive damages, treble damages, and civil money penalties, the potential monetary exposure Quiros faces under the Actions exceeds $1 billion.

### Ironshore's Refusal to Advance Defense Costs

39. Beginning on April 15 with the SEC Action, Quiros notified Ironshore of each of the Actions shortly after each was filed.

40. On May 4, 2016, Ironshore, through counsel, responded by refusing to cover the Actions or advance defense costs for Quiros to defend against the Actions.

41. Ironshore refuses to advance defense costs under either the 2016 Policy or the 2014 Policy based on various grounds, none of which are proper.

42. To date, Quiros has already incurred approximately $2 million in legal fees to defend against the Actions, the overwhelming majority of which he has been unable to pay.

43. If Quiros continues to be unable to pay his legal fees, the attorneys representing him in the actions are likely to withdraw and Quiros is likely to default.

## General Allegations

44. All conditions precedent to this action have been performed, waived, or are excused.

45. Quiros has retained legal counsel and is obligated to pay the undersigned counsel a reasonable fee for the services rendered in this action.

### COUNT I – DECLARATORY JUDGMENT AS TO THE 2016 POLICY

46. Quiros incorporates by reference the allegations in paragraphs 1 through 45 of this complaint as if fully set forth herein.

47. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

48. An actual, justiciable, and substantial controversy exists between Quiros and Ironshore with respect to the parties' rights and obligations under the 2016 Policy. Quiros believes that Ironshore is obligated under the 2016 Policy to advance the costs of defending the Actions against him. Ironshore disagrees that it is obligated to advance defense costs for the Actions under the 2016 Policy.

49. Given the pendency of the Actions against Quiros and Quiros's need to pay for a defense in the Actions, Ironshore and Quiros have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

WHEREFORE, Quiros requests that the Court enter judgment granting Quiros the following relief against Ironshore:

    A. A declaration that under the 2016 Policy Ironshore is obligated to advance the costs of defense for the Actions against Quiros.

      B.      An award of Quiros's costs in prosecuting this action.

      C.      An award of Quiros's reasonable attorneys' fees pursuant to Fla. Stat. § 627.428 or other applicable law.

      D.      Any other relief that the Court deems just and proper.

**COUNT II – DECLARATORY JUDGMENT AS TO THE 2014 POLICY (IN THE ALTERNATIVE)**

50.    Quiros incorporates by reference the allegations in paragraphs 1 through 45 of this complaint as if fully set forth herein.

51.    This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

52.    One of Ironshore's grounds for refusing to advance defense costs under the 2016 Policy is that, according to Ironshore a prior SEC investigation during the policy period of the 2014 Policy constitutes a "**Claim**" and causes the Actions and the SEC investigation to be deemed a single "**Claim**" under the 2014 Policy occurring during the policy period for the 2014 Policy.

53.    Ironshore has refused to advance defense costs under the 2014 Policy.

54.    Quiros disputes Ironshore's contention that the 2014 SEC investigation constituted a "**Claim**" and caused the Actions to "relate back" to the policy period for the 2014 Policy. To the extent Ironshore is correct on this point, however, Quiros pleads this count for declaratory relief as to the 2014 Policy in the alternative to Count I.

55.    An actual, justiciable, and substantial controversy exists between Quiros and Ironshore with respect to the parties' rights and obligations under the 2014 Policy. Quiros believes that, if Ironshore's "relation back" theory is correct, Ironshore is obligated under the 2014 Policy to advance the costs of defending the Actions against him. Ironshore disagrees that it is obligated to advance defense costs for the Actions under the 2014 Policy.

56. Given the pendency of the Actions against Quiros and Quiros's need to pay for a defense in the Actions, Ironshore and Quiros have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

WHEREFORE, Quiros requests that the Court enter judgment as follows:

    A. A declaration that under the 2014 Policy Ironshore is obligated to advance the costs of defense for the Actions against Quiros.

    B. An award of Quiros's costs in prosecuting this action.

    C. An award of Quiros's reasonable attorneys' fees pursuant to Fla. Stat. § 627.428 or other applicable law.

    D. Any other relief that the Court deems just and proper.

**COUNT III – BREACH OF CONTRACT UNDER THE 2016 POLICY**

57. Quiros incorporates by reference the allegations in paragraphs 1 through 45 of this complaint as if fully set forth herein.

58. This is an action for breach of an insurance policy arising out of Ironshore's refusal to advance defense costs for covered "**Claims**" under the 2016 Policy.

59. Under the 2016 Policy, Ironshore is obligated to advance Quiros's costs of defense for the Actions.

60. By refusing to advance defense costs, Ironshore has breached the 2016 Policy.

61. As a direct, foreseeable, and proximate cause of Ironshore's breach of the 2016 Policy, Quiros has suffered and continues to suffer damages.

62. Due to the nature of advancement as well as the financial ruin that will result if Quiros's attorneys in the Actions withdraw, Quiros has suffered and will continue to suffer irreparable harm if Ironshore is not immediately enjoined to advance defense his defense costs.

63. Quiros has no other adequate remedy at law that can cure the immediate and irreparable harm he will suffer if Ironshore continues to fail to advance defense costs for the Actions.

64. The injury Quiros will suffer if an injunction is not issued outweighs any injury that would be sustained by Ironshore by the issuance of an injunction. This is especially so because Ironshore has a contractual duty to advance defense costs. Furthermore, the 2016 Policy provides for reimbursement by an insured of defense costs advanced in error. Contrarily, once the right to advancement of defense costs is lost, it cannot be restored.

65. There is a substantial likelihood that Quiros will succeed on the merits of this action for advancement of defense costs.

66. An injunction would not disserve the public interest.

WHEREFORE, Quiros requests that the Court enter judgment granting Quiros the following relief against Ironshore:

    A. A preliminary and then permanent injunction requiring to Ironshore to advance Quiros's defense costs in the Actions.

    B. Contractual and compensatory damages.

    C. Pre- and post-judgment interest.

    D. An award of Quiros's costs in prosecuting this action.

    E. An award of Quiros's reasonable attorneys' fees pursuant to Fla. Stat. § 627.428 or other applicable law.

    F. Any other relief that the Court deems just and proper.

**COUNT IV – BREACH OF CONTRACT UNDER THE 2014 POLICY (IN THE ALTERNATIVE)**

67. Quiros incorporates by reference the allegations in paragraphs 1 through 45 of this complaint as if fully set forth herein.

68. This is an action for breach of an insurance policy arising out of Ironshore's refusal to advance defense costs for covered "**Claims**" under the 2014 Policy.

69. One of Ironshore's grounds for refusing to advance defense costs under the 2016 Policy is that, according to Ironshore a prior SEC investigation during the policy period of the 2014 Policy constitutes a "**Claim**" and causes the Actions and the SEC investigation to be deemed a single "**Claim**" under the 2014 Policy occurring during the policy period for the 2014 Policy.

70. While Quiros disputes this theory, to the extent Ironshore's "relation back" theory is correct, Ironshore nevertheless is obligated to advance Quiros's costs of defense for the Actions under the 2014 Policy.

71. By refusing to advance defense costs, Ironshore has breached the 2014 Policy.

72. As a direct, foreseeable, and proximate cause of Ironshore's breach of the 2014 Policy, Quiros has suffered and continues to suffer damages.

73. Due to the nature of advancement as well as the financial ruin that will result if Quiros's attorneys in the Actions withdraw, Quiros has suffered and will continue to suffer irreparable harm if Ironshore is not immediately enjoined to advance defense his defense costs.

74. Quiros has no other adequate remedy at law that can cure the immediate and irreparable harm he will suffer if Ironshore continues to fail to advance defense costs for the Actions.

75. The injury Quiros will suffer if an injunction is not issued outweighs any injury that would be sustained by Ironshore by the issuance of an injunction. This is especially so because Ironshore has a contractual duty to advance defense costs. Furthermore, the 2014 Policy provides for reimbursement by an insured of defense costs advanced in error. Contrarily, once the right to advancement of defense costs is lost, it cannot be restored.

76. There is a substantial likelihood that Quiros will succeed on the merits of this action for advancement of defense costs.

77. An injunction would not disserve the public interest.

WHEREFORE, Quiros requests that the Court enter judgment granting Quiros the following relief against Ironshore:

A. A preliminary and then permanent injunction requiring to Ironshore to advance Quiros's defense costs in the Actions.

B. Contractual and compensatory damages.

C. Pre- and post-judgment interest.

D. An award of Quiros's costs in prosecuting this action.

E. An award of Quiros's reasonable attorneys' fees pursuant to Fla. Stat. § 627.428 or other applicable law.

**DEMAND FOR JURY TRIAL**

Quiros demands a trial by jury on all issues so triable.

Dated: December 6, 2016

                                  Respectfully submitted,

                                  *s/ Derek E. León*
                                  Derek E. León
                                    Florida Bar No. 0625507
                                  Jeremy L. Kahn
                                    Florida Bar No. 105277
                                  **LEÓN COSGROVE, LLC**
                                  255 Alhambra Circle, Suite 800
                                  Coral Gables, Florida 33134
                                  Telephone:    305.740.1975
                                  Facsimile:     305.437.8158
                                  Email:    dleon@leoncosgrove.com
                                  Email:    jkahn@leoncosgrove.com
                                  Email:    hvidal@leoncosgrove.com
                                  Email:    eperez@leoncosgrove.com

                                  *Counsel for Plaintiff*